GUERARD & POLHILL, vs. JAMES POLHILL.

*Petition and Affidavit for foreclosure of two Mortgages on Personal property, and, affidavit of illegality.*

*Any* Judge of the Superior, or Justice of the Inferior Court in Georgia, (without reference to the residence of defendant,) may issue the *fiat* for the foreclosure of a mortgage of personal property.

When such *fiat* is granted by a Judge of the Superior Court, the Clerk of the Superior Court of a different County and Circuit from that in which the *fiat* was granted, may issue the execution.

And *it seems*, that the execution may be directed to all and singular the Sheriffs of the State.

In general. a statute which introduces a new rule of law, and directs a particular method of proceeding under it, will, although it has no negative words, debar any other mode.

Where one section of a statute without negative words, introduced a new mode of foreclosing a mortgage of personal property, and pointed out a method by which the mortgagor might dispute the sums due on the execution founded on such foreclosure, and a subsequent section of the same statute, also without negative words, allowed a defendant to make an affidavit of illegality in *all* cases where execution had issued illegally ; *held*, that the remedy in the latter section was not cumulative to the former, and that it referred to executions, *other* than those mentioned in the first section.

*It seems*, that under the mode prescribed by the 18th section of the Judiciary Act of 1799, the mortgagor may enter into any defence which may entitle him to relief from the execution.

There is nothing unconstitutional in said section.

## By CHARLTON, Judge.

ON the petition of the plaintiffs in this case addressed to a Judge of the Superior Courts of this State, praying a foreclosure of two mortgages on personal estate, supported by the usual affidavits of the amounts due, the Judge on the 23d of November 1821, ordered an "execution to issue in terms of the law," This order was granted by the Judge of the Eastern district. Execution was accordingly issued from the office of the Clerk of the Superior Court of *Burke* County, where the mortgagor resided, containing a mandate to have the several sums made on this execution, before a Superior Court to be holden in *Burke*. The Sheriff made his levy on the 23d of May, 1822,

and the property designated in the return was restored to, or permitted to remain in the possession of the defendant upon his having given sufficient bond and security to the Sheriff (or which he, the Sheriff, seemed to have required,) to remain in force, if the defendant should fail to establish the alleged illegality of the execution. This bond is dated the 6th day of August, 1822, and contemporaneously the following affidavit sworn to and tendered by the mortgagor.

"GEORGIA, BURKE COUNTY.

"Appeared before me, *James Polhill*, who being sworn, deposeth and saith—that the execution issued against him, on the foreclosure of two several mortgages, in favor of *Guerard & Polhill* vs. said *James Polhill* is illegal for the following causes, to wit: That he had no notice of said foreclosure—that they were foreclosed out of the County where he resides, and was residing at the time of making said mortgages—that the execution was issued in a different County from that in which the foreclosure took place—that there was but one execution on two mortgages, and that the consideration for which said mortgages were given has entirely failed."

A motion is now made by *Reed*, that this affidavit be set aside, for these principal reasons, because the affidavit of illegality does not apply to this species of execution—because it was competent for any Judge of the Superior Court, to grant the order for the issuing of the execution which was to operate where the mortgagor resided—because no notice of the petition for foreclosure of personal property is required by law—because the alleged failure of consideration is matter extrinsic which can never be the basis of an affidavit of illegality—because the Act of the General Assembly prescribed the remedy which the mortgagee ought to have pursued—and lastly, because if that prescribed and certain remedy was not accepted, the only cumulative redress that could

be afforded was to be found in the Chancery jurisdiction of this Court.  *Walker & Wilde,* on the other side, contended; that any law which divested a citizen of a right associated with his person or his property, without due and timely notice of the proceedings by which that right was assailed and divested, was unconstitutional, because it deprived the citizen of the great privilege allowed him by our fundamental law, of being heard and tried in the County of his residence—and withal, repugnant to the fitness of things, which proclaimed in every case before condemnation, " *Audi alteram partem.*"

It was also urged by these gentlemen, that the affidavit of illegality was a cumulative remedy, reaching, and providing for every case where the illegality of the execution could be established by law or facts *dehors,* or intrinsic in any and every case. This, they observed, was the speedy and efficient remedy, which the Legislature had substituted for the difficulties, which might be attendant on an application for relief, to a Chancery jurisdiction. Having no access to authorities in my present situation, and the hour having arrived at which my judicial functions must cease in this district—the first consideration must carry with it my apology, for the omission of cases in support of the principles I may advance, and the second, the delivery of this opinion within so short an interval for advisement and preparation. I regret that a longer time has not been allowed me for reflection, but as a decision is expected from me, I feel it a duty under any combination of circumstances not to disappoint that expectation.

Having given a synopsis of the arguments of counsel, the question which upon the whole presents itself, is simply this : Can a mortgagor of personal property avail himself of this remedy of affidavit of illegality ? Under the directions of our judicial Act a mortgage of personal property is foreclosed in the manner pursued by the mortgagees. The *fiat* for the execution may be granted by any one of the Judges of the Superior, or Justices of the

Inferior Court, but there is no designation of the Clerk whose duty it shall be to issue the execution. The Act merely declares, that, "thereupon the Clerk of the Superior or Inferior Courts shall issue execution."

Looking then to the literal phraseology of the Act, the *fiat* is not confined to the Judge or Justice of the district in which the defendant resides, or to the Clerk who may issue it; but in this case the Clerk of the Superior Court where the defendant resided issued the execution, which I presume, was done in analogy to the requisition that a defendant should be sued, or that process should issue against him in the place of his domiciliation, and in a supposed confoimity to the same analogy, the writ was delivered to " the Sheriff" of the County, where was also the domicil of the defendant. The law does not require the writ should be so directed. "The Sheriff" is a generic term, which leaves it optional, I think, with the Clerk to direct the writ, to any, or all the Sheriffs of the State. Under these views of the law, I cannot sustain any objections to the fiat of the Judge, or the subsequent acts of the Clerk and Sheriff. It is in the provisory clause of the judicial Act where all the difficulty lies, and it is in these words : " That if any dispute shall happen as to the sum due on any mortgage, it shall be lawful for the said Judges or Justices of the Inferior Courts, *on affidavit*, to order such sale to be postponed, the mortgagor giving good and sufficient security in the sum sworn to be due, for returning such property when called for by the Sheriff, which bond shall be assigned by the Sheriff to the mortgagee, who may sue and recover therein ; but the jury shall be sworn to give at least 25 per centum, in case it should appear, that such application was made for delay only." (*Marb. & Craw.* 298 )

The bond therefore taken in this case by the Sheriff is to all intents void, because there is no affidavit in terms of the Act, or order for postponement and for good and sufficient security. It

cannot therefore be pretended, that those requisites of the Act have been complied with, or that any benefits ean be derived from its provisory enactment. But this being the remedy prescribed for the adjustment of "any dispute which may happen, as to the sum due on any mortgage," the question recurs, can another and a different remedy be pursued? In the great case of *Middleton* and wife vs. *Crofts*, in Saunders' *Atkyn's* Appendix, 674, 675.—Lord *Hardwicke* who made and delivered the arguments sanctioned by the opinions of the Court of King's Bench, lays down the rule " touching the repeal of laws—*leges posteriores, priores, contrarias abrogant:* but subsequent Acts of Parliament in the affirmative giving new penalties, and instituting new methods of proceeding, do not repeal former methods and penalties of proceeding, ordained by preceding Acts of Parliament, without negative words"—upon this doctrine, the former mode of proceeding through a Chancery jurisdiction was not abrogated by this posterior statute, because it contains no negative expressions, is therefore affirmative, and in the language of counsel, cumulative. But, says a compiler of English jurisprudence, supported by ancient authorities, " it is in the general true, that if an affirmative statute, which is introductive of a new law, direct a thing to be done in a certain manner, that thing shall not, although there are no negative words, be done in any other manner." (*Bac. Abr.* 377, (G.) London Ed. 1798.) This rule must in the present case, have its full effect unless " *lex posterior,*" announces its abrogation. The law however upon which the counsel for the mortgagor relies for his cumulative remedy, is a section of the Act containing both remedies, and of course passed contemporaneously—neither the maxim nor the rule therefore strictly applies, but the point is to be determined on the suggestion, that the sections of the judiciary Act are to be construed, as distinct regulations, susceptible of the same interpretations that would be applied to them, as if they had been enacted in separate statutes. Applying this test, what

PART I.—F. 2.

does the posterior law, in the shape of a section declare? It declares, "that in ALL CASES where execution shall issue illegally, and the person against whom such execution may be, shall make oath thereof, and shall state the causes of such illegality, such Sheriff shall return the same to the next term of the Court, out of which the same issued, which Court shall determine thereon, at such term." Now, the language of this section of the law is as comprehensive as it could be, because it applies to "all cases." But could the Legislature have intended that one section of an Act containing no negative words, but conceived in general and affirmative terms, should afford an accumulative remedy to a new mode of proceeding, or, the direction of a thing to be done in a particular or certain manner! I think not. I believe the Legislature intended by these apparently conflicting provisions, that the objections to an execution issued on a foreclosure of a mortgage of personal property, should be based on the isolated fact, that the sum sworn to was not due, whatever might be the truth upon that verified allegation : and under my present impressions, I do not perceive any difficulty, in going into the consideration of the mortgage, or any other fact or principle of law, which would entitle the mortgagor to relief, under this section of the judicial system. But the 32d section must refer to executions other than those which are designated in the same Act, and the affidavit as to those executions must of course refer to other and different cases than those, which would invalidate an execution issued under the special directions of another section. The difference is, that the affidavit and order for postponement on the foreclosure of a mortgage of personal estate is founded upon extrinsic—and the affidavit of the 32d section upon intrinsic matter. The true principle however is, that no negative words of the 32d section inhibits the introduction of the new law in section 18, and that therefore it must be done in the manner prescribed by that section.

As to the constitutionality of this section of our judicial system,

[Guerard, et. al. vs. Polhill.]

I have only to observe, that the issuing of the execution and its operation being so closely brought home by the levy to the attention of the mortgagor, combined with the remedy afforded him by affidavit as to the sum due, and the ulterior investigation through a trial by jury, affords all the notice which the constitutional abstract principles suggested could require.

Affidavit of illegality set aside.

Reed, for plaintiffs—Walker & Wilde, for defendant.